UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

———————————————

In re:

MARK G. REUSS, JR.,                                         Case No. DT 07-05279
                                                            Chapter 7
            Debtor.                                         Hon. Scott W. Dales

_____/

OPINION AND ORDER REGARDING DEBTOR'S MOTION TO HOLD CREDITOR IN
CONTEMPT

           PRESENT:    HONORABLE SCOTT W. DALES
                       United States Bankruptcy Judge


I.  INTRODUCTION AND JURISDICTION

On March 16, 2011, in Traverse City, Michigan, the court held a hearing to consider the Debtor's Motion for Finding of Violation of Discharge Injunction (the "Motion," DN 110) against Wingspan Portfolio Advisors, LLC ("Wingspan") and its agent, Essence Jefferson. The Motion arises from letters that Wingspan sent to the Debtor, Mark G. Reuss, Jr. (the "Debtor"), and his counsel, Thomas J. Budzynski, to make post-discharge arrangements to recover its collateral.

This court has jurisdiction over the Debtor's case pursuant to 28 U.S.C. §§ 157(a) and 1334(a). In addition, the court has inherent authority to enforce its orders. This contested matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(O).

The following constitutes the court's findings of fact and conclusions of law in accordance with Bankruptcy Rules 7052 and 9014(c). As explained below, based upon the plain language of 11 U.S.C. § 524(a)(2) and the record (including the parties' stipulations), the court finds that Wingspan did not violate the discharge injunction and therefore is not in contempt.

II. ANALYSIS

At the hearing, the parties agreed that the court could and should make its decision without conducting an additional evidentiary hearing. In addition, Debtor's counsel[1] further narrowed the issues by conceding that if any contempt occurred, it occurred when Wingspan sent a letter dated December 3, 2010 (the "December Letter") to Mr. Budzynski several months after Mr. Budzynski advised Wingspan that the Debtor intended to surrender Wingspan's collateral. Mr. Luyt also advised the court that the Debtor was no longer seeking punitive damages, but only reasonable attorney fees for responding to the December Letter, filing the Motion, and appearing at the hearing.[2]

The court reviewed the moving and responsive papers, considered two letters admitted as exhibits, and heard oral argument. After permitting Debtor's counsel to prepare an affidavit documenting reasonable attorney fees incurred because of the December Letter, the court took the matter under advisement. The parties generally agree about the following historical facts, but differ as to the inferences the court should draw.

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 24, 2007 and received a discharge on or about December 10, 2007. The discharge relieved the Debtor of any personal liability on the debt secured by a mortgage on the property commonly known as 3926 Sean Robinson Ct., Traverse City, Michigan (the "Property"). The court, however, did not avoid or otherwise disturb the mortgage that Wingspan now seeks to enforce.

[1] Gregory Luyt, as local counsel, argued the Motion for Mr. Budzynski, who maintains his office in the Eastern District of Michigan.

[2] In its Motion, the Debtor originally requested $10,000.00 in costs, fees, and damages. At the hearing, Mr. Luyt narrowed this amount to reasonable attorney fees that accrued after August 18, 2010 and pertained to the December Letter. *See* Transcript of hearing held March 16, 2011 at p. 12, lines 13-25 to p. 13, lines 1-3.

Several years later, Wingspan wrote to the Debtor and informed him that Wingspan was the new servicer of the mortgage on the Property. This was the only correspondence that Wingspan addressed directly to the Debtor.  In August, 2010, however, Wingspan's counsel called and wrote to Debtor's counsel, Mr. Budzynski, concerning Wingspan's foreclosure rights and inquiring about the Debtor's intentions regarding the Property.  Mr. Budzynski confirmed for Wingspan, in writing, that the Debtor intended to surrender the Property, and that Wingspan should cease contact with the Debtor or face a motion for violating the discharge injunction. However, in Wingspan's December Letter to Mr. Budzynski, the creditor inquired again about the Debtor's intentions concerning the Property, and reiterated that its correspondence was not an attempt to collect the debt as the Debtor's personal liability.

Making good on his threat, Mr. Budzynski then filed the Motion, arguing that by sending the December Letter, Wingspan was attempting to collect a debt as a personal liability of the Debtor, in contempt of 11 U.S.C. § 524(a)(2) and the court's discharge order.

The issue before the court, as narrowed at the hearing, is whether Wingspan violated the discharge injunction by sending the December Letter to Mr.  Budzynski, thereby demonstrating contempt of the court and its injunction.

The Bankruptcy Code provides that an order discharging the debtor "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2).  Fundamentally, a discharge merely releases a debtor from personal liability on the discharged debt; when a creditor holds a mortgage lien or other interest to secure the debt, the creditor's rights in the collateral, such as foreclosure rights, survive or pass through the bankruptcy.  *See Tennessee Student*

*Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) ("discharge order releases a debtor from personal liability with respect to any discharged debt"); *Johnson v. Home State Bank*, 501 U.S. 78, 82–83 (1991) (lien survives discharge). After the automatic stay terminates as to the property,[3] a secured creditor may take any appropriate action to enforce a valid lien surviving the discharge, as long as the creditor does not pursue *in personam* relief against the debtor.

Because the discharge order operates as an injunction, the court may hold a creditor in contempt for violating its order. *In re Roush*, 88 B.R. 163, 164-65 (Bankr. S.D. Ohio 1988). Given the limits on bankruptcy court jurisdiction, however, the court generally regards such proceedings as civil rather than criminal in nature, compensatory and coercive rather than punitive.  *See In re Greenspan*, 2011 WL 310703 (6th Cir. B.A.P. 2011) (recognizing right to damages and attorney fees if debtor establishes contempt of the discharge injunction, and citing cases).

In a civil contempt proceeding, the movant must prove that the defendant "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006) (*quoting Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir. 1991)).  Here, to enforce the discharge injunction, the Debtor must show that Wingspan "(1) violated the discharge injunction (and thus the order granting the discharge) and (2) did so with knowledge that the injunction was in place." *In re Gunter*, 389 B.R. 67, 72 (Bankr. S.D. Ohio 2008).

Wingspan does not deny it knew about the discharge injunction. It contends, however, as stated in the body of the December Letter, that it was not trying to collect the debt as a personal

---

[3] The automatic stay of an act against property continues as long as the property remains within the estate, irrespective of case closing, dismissal, or discharge. *Compare* 11 U.S.C. § 362(c)(1) *with id*. § 362(c)(2).

liability of the Debtor -- an action forbidden by the plain language of the statute -- but was simply inquiring about the Debtor's intentions regarding the collateral in which its mortgage lien persisted.   Because the discharge injunction did not extinguish Wingspan's rights in the collateral, the creditor could take appropriate actions to enforce its rights *in rem,* even if doing so required communication with the Debtor or, as in the case, Debtor's counsel, as a matter of courtesy or convenience.  The tenor and text of the December Letter, coupled with the previous language disavowing any attempt to collect a debt, clearly reflect Wingspan's effort to take appropriate action regarding its rights in the collateral, not to obtain payment on the discharged debt. The fact that Wingspan addressed and sent the December Letter to Mr. Budzynski rather than the Debtor himself further undercuts any suggestion that Wingspan intended to pressure the Debtor.

It is true, of course, that Mr. Budzynski previously advised Wingspan that the Debtor intended to surrender the Property, and it is also true that the December Letter seems to ignore that report.   Although Wingspan may have been in contempt of Mr. Budzynski's correspondence, it was not in contempt of court: the December Letter was not an attempt to collect a discharged debt as a personal liability of the Debtor, which is all the statute forbids.

Where the language of a statute is plain on its face, the "sole function of the courts is to enforce it according to its terms."  *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (*quoting Caminetti v. United States*, 242 U.S. 470 (1917)).   Notwithstanding the discharge, Wingspan had a right to liquidate its collateral. Reasonable and non-coercive communications with the Debtor and his counsel directed toward that limited purpose do not violate the discharge injunction.

### III. CONCLUSION AND ORDER

The court regards the Motion as an overreaction to Wingspan's clumsy attempt to walk the fine-line between liquidating its collateral (which is permissible) and collecting its debt as a personal liability of the Debtor (which is not).   The supposed infraction that prompted the Motion should have been addressed by initiating a conversation, not a contested matter.

"When a court metes out a sanction, it must exercise such power with restraint and discretion." *In re Downs*, 103 F.3d 472, 478 (6th Cir. 1996). Under these circumstances, "restraint and discretion" counseled against filing the Motion, and certainly against granting it.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Debtor's Motion (DN 110) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Bankruptcy Rule 9022 and LBR 5005-4 upon Mark G. Reuss, Jr., Thomas J. Budzynski, Esq., Gregory M. Luyt, Esq., and Kenneth A. VanNorwick, Esq.

END OF ORDER

**IT IS SO ORDERED.**      Scott W. Dales
United States Bankruptcy Judge   **Dated: April 12, 2011**